WALL v. WALL.

1. DIVORCE—DESERTION.

A husband's absence from his home for a day or two, without his wife knowing his whereabouts, is not such continued absence as constitutes desertion.

2. SAME—NONSUPPORT—EXTREME CRUELTY.

In a suit by a wife for divorce, where it appeared that defendant was without means and derived his income from his labor, and supported his wife generally as well as most persons in similar circumstances, held, that such nonsupport as constituted extreme cruelty was not established.

3. SAME—EXTREME CRUELTY.
   For a big, husky man to handle his wife, a delicate girl, as
   though she is his equal in strength, is extreme cruelty if
   persisted in, although he does not act maliciously.

4. SAME—PERSONAL VIOLENCE—EXTREME CRUELTY.
   The use of personal violence by the husband on his wife was
   not justified by her mother's very frequent presence and
   advice in his home.

Appeal from Oceana; Sullivan, J. Submitted April
3, 1917. (Docket No. 5.) Decided May 31, 1917.

Bill by Ida M. Wall against Clayton Wall for a divorce. From a decree for plaintiff, defendant appeals. Affirmed.

*F. E. Wetmore,* for plaintiff.

*Howard F. Withey,* for defendant.

BIRD, J. Plaintiff filed her bill in Oceana county,
charging the defendant with desertion and extreme
cruelty. Defendant filed his answer and cross-bill in
which he charged plaintiff with desertion and extreme
cruelty. At the hearing, defendant waived his cross-
bill and expressed a desire to live with plaintiff again.
After hearing the testimony, the chancellor expressed
considerable doubt as to whether plaintiff had sus-
tained the allegations of her bill, at the same time of-
fering to the parties some wholesome advice, after
which he adjourned the case for a time, saying he
would determine it later. After a lapse of several
months, he granted plaintiff a decree on the ground
of extreme cruelty with an allowance for alimony.
The defendant, feeling aggrieved over the decree, has
appealed to this court.

The parties are young people who were married in
November, 1911. At the time, plaintiff was 18 and
defendant 19 years of age. Two children were born
to them. After marriage, for a time they lived on

and worked land owned by defendant's father. Later they lived with plaintiff's parents. In the winter of 1912 and 1913, they were temporarily estranged, but patched up their differences, and in March, 1913, went to Hastings to reside. They remained there until September, when they separated, and each claims that the other deserted.

1. Plaintiff's claim that defendant deserted her while at Hastings is not sustained by the proofs. Her testimony, at the most, shows temporary absences of a day or two in length, without her knowing his whereabouts. No such continued absence is shown as would amount in the law to desertion.

2. One of the specifications of extreme cruelty was the charge of nonsupport. We are not convinced that this charge is sustained by the proofs. Her own testimony, coupled with that of her relatives, who testified in her behalf, tends to show that she was supported generally as well as most people in similar circumstances. Defendant was without means, and his income was derived wholly from his labor.

3. Many instances of personal violence were shown. These present a more serious question and one not so easily disposed of. Some of the charges the defendant denies; others he disposes of by saying they were "rollicking," or "having fun." Some of the instances detailed were: In holding plaintiff down to the floor and marking her face with an indelible lead pencil with such force that it left ridges on her face. In holding her against the wall and choking her until she could not breathe. Choking her and injuring her back. Holding her by the legs and making her walk on her hands from one room to another. Other occasions are detailed of pulling her hair, pulling her ears, and kicking her leg, and some of these occurred when she was about to become a mother. Plaintiff assigns cruelty and anger as the cause. Relatives, who wit-

nessed some of the scuffles, think they began in play but ended in anger. Defendant says they were all in fun. For defendant, who was a big, husky fellow, to handle plaintiff, a delicate girl, as though she were his equal in strength, was extreme cruelty if persisted in, even though he were actuated by no malice.

But defendant insists that his troubles have been, in a large measure, due to the visits and interference of his mother-in-law. Some of plaintiff's family, who testified in her behalf, expressed a like opinion. The chancellor seems to have been impressed in the same way, and frankly said so to the parties at the conclusion of the testimony. It is quite likely that the marriage relation of these young people might have survived the rough weather of the first year and a half of married life if they had had fewer visits and less advice from plaintiff's mother; but, even if it be conceded that the throwing up of their marital relations was due to an overdose of parental attention, defendant cannot justify his acts of personal violence on this ground. His mother-in-law's presence in his home against his will might furnish an excuse for his temporary lack of interest in his home, and might account for his failure to provide his table as bountifully as he otherwise would, and might also account for his lack of amiability while at home; but it would not justify his use of personal violence on his wife. It is only in cases of great aggravation that a man can justify himself in using personal violence on a woman, and especially is this so when she happens to be his wife.

We are of the opinion that, upon the whole record, this decree should be affirmed.

KUHN, C. J., and STONE, OSTRANDER, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.