## FEYERHERM v. FEYERHERM.

No. 17944. Opinion Filed Nov. 22, 1927.

Reharing Withdrawn Dec. 27, 1927.

(Syllabus.)

1. **Divorce—Grounds—"Extreme Cruelty."**

Extreme cruelty exists when the conduct of the husband or wife is such that the life or health of the other may be endangered, or when such conduct unjustifiably wounds the mental feelings or so destroys the peace of mind as seriously to impair the health or endanger the life of the other, or in such as utterly destroys the legitimate objects and aims of matrimony.

2. **Appeal and Error—Disposition of Equity Case where Judgment Against Weight of Evidence.**

In an equitable action the Supreme Court will weigh the evidence, and, if the judgment of the trial court is clearly against the weight thereof, will render, or cause to be rendered, such judgment as said court should have rendered.

Error from District Court, Tulsa County; Robert D. Hudson, Judge.

Action by Marion Feyerherm against Fred J. Feyerherm, for divorce, alimony, and custody of a minor child. Judgment for defendant. Plaintiff appeals. Reversed.

Poe & Lundy, for plaintiff in error.

Biddison, Campbell, Biddison & Cantrell, for defendant in error.

RILEY, J. Herein is presented an appeal from a judgment denying Marion Feyerherm a divorce, alimony, and custody of a minor child.

The established facts are that plaintiff was married to defendant, Fred J. Feyerherm, at Pawnee on December 11, 1924, when she was 16 years of age and pregnant. The defendant husband is a man 47 years of age, of considerable business experience, and financially independent. A child was born to plaintiff and defendant in July, 1925. The action below was based on the ground of extreme cruelty, and the evidence adduced tended to establish cruelty by neglect and indifference, as distinguished from actual violence, such as would wound the mental feelings and destroy the legitimate objects of the marriage. From and after the time of marriage the plaintiff was nervous and in a weakened condition. After the marriage at Pawnee the defendant took the plaintiff to various hotels in Tulsa. He did not take her to his home. He testified that he could not secure his home because it was rented. He testified that he loved his wife at the time of the marriage, but

that he did not know how long that affection continued and did not know whether it still continued. He testified concerning a man named Brummage telephoning to his wife's mother for the purpose of endeavoring to show that she was not innocent as was said. He testified that he was not present when his baby was born; that he did not see his baby until the day of the trial, when it was ten months old. It appears that defendant had paid monthly allowances and all expenses incident to the birth of his child and for the care of his wife following her illness. The defendant's theory, as expressed in his answer and by his evidence, was that the plaintiff and her mother were acting in conspiracy to deprive him of his property for their joint benefit; that, the plaintiff having come into a court of equity with unclean hands she should not be heard.

Considerable evidence is contained in the record concerning alleged attempts on the part of the defendant to secure a criminal abortion upon the plaintiff prior to the marriage. This evidence was improperly admitted, for the reason that the marriage condoned all acts prior to the marriage.

The mental and physical condition of the plaintiff will be considered. Conduct which might not be cruelty to a well person may readily be cruelty to a sick woman. Wall v. Wall, 196 Mich. 512.

It is not necessary that conduct of the defendant should extend to physical violence. Carpenter v. Carpenter, 30 Kan. 712, 2 Pac. 122; Pearson v. Pearson, 230 N. Y. 141, 129 N. E. 349; Robertson v. Robertson, 73 Okla. 299, 176 Pac. 387; Hildebrand v. Hildebrand, 41 Okla. 306, 137 Pac. 711.

In Finnell v. Finnell, 113 Okla. 164, 240 Pac. 62, the rule is stated:

"Extreme cruelty, as a ground for divorce, while there is no actual violence, contemplates treatment, abuse, neglect, or bad conduct such as damages health or renders cohabitation intolerable and unsafe, and charges of infidelity and misconduct which are untrue."

We find from the evidence that the conduct of the husband was such that impaired the physical and mental well-being of the wife and tending to utterly destroy the legitimate purposes and aims of the matrimonial state. McCurdy v. McCurdy, 123 Okla. 295, 253 Pac. 295.

Acts of the defendant occurring after suit for divorce is brought cannot be made grounds for divorce, but it is well settled that the court may look at the conduct of the husband toward his wife since commencement of the action to ascertain the weight and color of the acts alleged and proved. Gardner v. Gardner (Nev.) 45 Pac. 139; Bishop on Marriage, Divorce and Separation, vol. 1, sec. 1451.

The defendant testified that plaintiff was not quarrelsome. Dr. Goodman testified her condition was due to nervousness.

Defendant attempts to excuse his absence from and neglect of his wife by stating that her mother forbade him coming to her house.

So far as the record discloses, he made no attempt at a reconciliation, no inquiry concerning her condition, nor that of his child. He says his wife was never angry at him in her life. His conduct was not in furtherance of the legitimate objects of matrimony, especially so between a man of experience and years and a young, inexperienced, pregnant wife.

The theory of the defendant is that the mother-in-law's acts and influence with the plaintiff were to bring about a divorce and that such theory established plaintiff not to be without fault, but in this action the defendant is called to answer for his own delinquencies. Misconduct of the mother-in-law, if any, constituted neither defense nor excuse. Pooley v. Pooley (Iowa) 157 N. W. 129; Wall v. Wall (Mich.) 162 N. W. 1001.

The record discloses nothing that would relieve the defendant from his marital duty to protect his wife and to demean himself as the duty of a father and husband demanded, even from schemes and machinations of others. His motive is not the test, the effect produced is the guide; that effect is that the legitimate objects of this union have been destroyed. McNeill v. McNeill (Miss.) 87 So. 645.

The divorce prayed for should be, and the same is granted.

The testimony of defendant shows him to be a man of considerable means. He owns a one-half interest in real estate at Boulder and Frisco, Tulsa, Tulsa county, Okla., his share worth $15,000, and one-half of the stock of the Nichols Transfer & Storage Company, his share worth $25,000, and other property, real and personal. We direct an alimony award of $10,000, and award the custody of the minor child to the mother and direct the lower court to allow a reasonable sum for support and maintenance of said minor child.

BRANSON, C. J., MASON, V. C. J., and HARRISON, LESTER, CLARK, and HEFNER, JJ., concur.

HUNT, J., concurs in the rendition of the

decree of divorce, but is of the opinion the cause should be remanded to the district court of Tulsa county for further hearing as to alimony and support of child, and, therefore, dissents as to alimony awarded.

PHELPS, J., dissents.