## NOBLE et al. v. JOHNSON.

No. 19194. Opinion Filed April 15, 1930.

Rehearing Denied Sept. 16, 1930.

Allen, Underwood & Smith and Leahy, Maxey, MacDonald & Holden, for plaintiffs in error.

Twyford & Smith, for defendant in error.

LEACH, C. J. A. Johnson, the defendant in error, commenced this action in the district court of Oklahoma county against Chas. F. Noble and Creek Oil Corporation, the plaintiffs in error, and J. A. Raney, the Gypsy Oil Company et al., and alleged, in part and in substance, in his petition, that on October 25, 1921, he became the owner of an undivided six-sevenths of a one-sixteenth interest in an oil and gas lease on a certain tract of land in Creek county; that the defendants Chas. F. Noble and J. A. Raney were also owners of an interest in the lease, and that the defendant Noble has been in actual possession of the described leasehold; that said lease is now and has been producing large quantities of oil and gas; that the defendants received, sold, and converted the oil and gas and the proceeds thereof, and failed to account to the plaintiff for his share, after due demand therefor, although the defendants and each of them had actual and constructive knowledge of the title and ownership of the plaintiff in and to said leasehold interest; that the records showing the amount of oil produced from said lease were in the exclusive possession and control of the defendants, particularly Chas. F. Noble, who refused to permit the plaintiff to examine such records, and further alleged that Noble owned, controlled, and operated the Creek Oil Corporation.

The plaintiff prayed for an accounting and for judgment against the defendants for the sum of $16,042.33, the amount which he alleged to be due him, and for such further sum as might be found due on accounting and for general relief.

The defendant Raney, by answer and cross-petition, alleged that he was the owner of a one-seventh of a one-sixteenth interest in the lease involved, admitted the ownership asserted by the plaintiff, Johnson, in such lease, and further alleged that the defendants Noble and Creek Oil Corporation had been in possession of the leasehold since the beginning of operation thereon, had produced and sold large quantities of oil and gas therefrom, and had refused to account to him, Raney, for his proper share thereof, and prayed for an accounting and for judgment for his proper share.

The defendant Gypsy Oil Company, by answer, alleged that it was the owner of a one-half interest, also a three-one hundred twelfths interest in the lease involved; set out certain matters of defense, and generally denied any liability to the plaintiff.

The defendants Chas. F. Noble and Creek Oil Corporation filed a joint answer in the suit, and alleged, in part and in substance, that at one time the defendant Noble was the owner of a one-half interest in the lease in question, but that he assigned such interest, a one-sixteenth, to J. A. Raney, and seven-sixteenths to Creek Oil Corporation; that the interest was assigned Raney at the request and direction of the plaintiff, Johnson, who advised them that he was interested with Raney in the interest, and that Raney was a trustee for him, and that all transactions with reference to the interest so assigned should be managed and directed by Raney; that the answering defendants thereafter carried on their negotiations regarding such one-sixteenth interest with the defendant Raney; that in a certain action in the district court of Creek county, entitled "Charles F. Noble Oil & Gas Co. v. Charles F. Noble, J. A. Raney, and Creek Oil Corp.", the defendant Raney, for himself and as trustee of Johnson, entered into a written arbitration agreement, and that an award and decree was entered in that action, wherein the interest of J. A. Raney in the lease in question was fixed at a one-thirty-second interest; that the interest of the said Johnson, if any he had in such lease, was fixed by such decree, and included in the one-thirty-second interest awarded the defendant Raney, and that they, Raney and Johnson, by their conduct and representations, were estopped from asserting a claim to more than a one-thirty-second interest in the lease, and that they were bound by such award and decree. It was further alleged that Johnson was fully aware of the manner in which the proceeds derived from the lease were being distributed, and had full knowledge of the pendency of the action in Creek county, and appeared as a witness therein; that he withheld from record his assignment from Raney until long after the judgment in Creek county became final and binding; that the answering defendants had properly accounted, paid over, or tendered to J. A. Raney, individually and as trustee of Johnson, all sums due them.

By later amendment to their answer, Noble and Creek Oil Corporation alleged that the defendant J. A. Raney took the assignment of a one-sixteenth interest in the lease and carried the same in his name for the

purpose of hindering, delaying, and defrauding the creditors of the plaintiff, Johnson, and that, by reason of such fact, the plaintiff, Johnson, and defendant Raney were estopped to allege the existence of any interest in the lease in the plaintiff or to question the decree of the district court of Creek county, or the distribution of the proceeds under the lease as against the answering defendants.

The cause was referred by the district court of Oklahoma county to Hon. M. M. Thomas, as a referee, who, after hearing the evidence, made certain findings of fact and conclusions of law, on which the trial court, after sustaining the plaintiff's objection to one finding of fact and conclusion of law by the referee, entered judgment in the case in favor of Johnson, against the defendants Noble and Creek Oil Corporation, for the sum of $17,001.51. Their motion for a new trial was denied, and they bring this appeal and assign as error, with others, the action of the trial court in approving the findings of fact and conclusions of law of the referee and in rendering judgment thereon against them for an excessive amount not supported by the law and the evidence and in failing to allow them, Noble and Creek Oil Corporation, credit for a proportionate part of the expenses in drilling the first well on the lease involved and a proportionate part of the expenses expended in defending suits involving the title to the lease, and that the trial court erred in overruling their motion for a new trial, which motion was based in part on the ground that the judgment is against the law and the evidence and is not supported thereby.

The plaintiffs in error Noble and Creek Oil Corporation first present and argue the following proposition:

"Plaintiff's fraudulent and deceptive conduct contaminates his entire case, and the law should leave the parties to this action where it found them."

In support of the proposition, plaintiffs in error quote from Broom's Legal Maxims, 742, and 13 C. J. 492, sec. 440, wherein the rule is announced, in substance and to the effect, that the courts will not enforce or aid parties to an illegal agreement, but will refuse relief to either or any of the parties thereto. Several cases from this court and other jurisdictions are cited as supporting the rule, among such being: Citizens Nat. Bank v. Mitchell, 24 Okla. 488, 103 Pac. 720; First Nat. Bank of Maud v. McKnown, 73 Okla. 310, 176 Pac. 245; Trawick v. Sabin, 128 Okla. 137, 261 Pac. 916; McLain v. Okla. Cotton Growers' Ass'n, 125 Okla. 264, 258

Pac. 269; King v. Antrim Lbr. Co., 70 Okla. 52, 172 Pac. 958. The principle and rule of law announced in the cited cases is well established, and the question to be determined under the proposition here advanced is as to whether the facts and circumstances of the instant case bring it within such rule. The plaintiffs in error requested the referee to make findings of fact on the question here presented, such requested findings being, in substance, that Johnson directed Noble to carry Johnson's interest in the name of Raney for the purpose of cheating and defrauding Johnson's creditors and to avoid execution by a levy on such interest by judgment creditors and that Johnson delayed in recording his assignment from Raney for the same reason, which requested findings of fact were denied by the referee. The conduct on the part of Johnson, on which the first proposition is presented, and the record relating thereto, appear to be in part as follows:

In the latter part of the year 1920, the plaintiff, Johnson, entered into a tentative agreement with the Gypsy Oil Company to drill a test well for oil and gas on the leasehold here involved in consideration of an assignment to him of a one-half interest in the lease which was then owned by the Gypsy Company. Before the tentative agreement became effective, Johnson entered into negotiations with the defendant Noble, which resulted in a written agreement between the Gypsy Oil Company and Noble, dated March 21, 1921, whereby Noble agreed to drill the well on the acreage involved for a one-half interest in the lease and an agreement between Johnson and Noble whereby Noble was to carry Johnson for a one-sixteenth interest in the lease, or a one-eighth interest of Noble's one-half interest. Pursuant to the agreements, Noble, assisted to some extent by Johnson, proceeded to drill a producing well on the acreage. At the request of Johnson, Noble conveyed by written assignment a one-sixteenth interest in the lease in question to J. A. Raney, who had a working agreement with Johnson, whereby he, Raney, was to receive a one-seventh interest in the oil properties acquired by Johnson. On October 25, 1921, Raney made a written assignment of a six-sevenths interest of a one-sixteenth interest in the lease to Johnson, who placed such assignment of record October 31, 1924.

Under a judgment and execution in favor of the Oil Well Supply Company against Johnson a three-one hundred twelfths interest in the lease was sold and sheriff's deed issued thereon in April, 1925.

The defendant Noble testified concerning

the carried interest and the assignment thereon as follows:

"Q. I wish you would tell the court fully the conversation you had with him (Johnson) on that subject. A. Well, as I remember, I first made an agreement with Mr. Johnson to carry him for an eighth of the half and I believe that I wrote up an agreement with him of that character as I now recall it, both him and Mr. Raney looking after the drilling of the well which was completed about the last day of May or the first day of June, 1921. Shortly after that, as I remember, Mr. Johnson came to me and said that he had—he owed a great deal of money, had some judgments hanging over him and some pending litigation, and that he would like to have us make an assignment of that interest to J. A. Raney, and, as I remember, at his request we destroyed the agreement that I had already with him, and I am pretty certain that we dated back the assignment that I made to Mr. Raney. Q. Now, what instructions did Mr. Johnson give you, with reference to how to handle the matter with Mr. Raney? A. Well, after the assignment was made to Mr. Raney, why, he instructed me to have my transactions with Mr. Raney in regard to the lease. He was putting over all interest he had in the same to Mr. Raney, and he instructed me to deal with Mr. Raney. * * * Q. I wish you would define to the court what a carried interest means. A. It means a certain proportionate part of the net profits derived from the lease, provided there are any net profits. * * * Q. I believe you stated here the other day that you and he, Johnson, reduced this contract to writing, and later on you didn't use it. A. I didn't say definitely. I say we may have, but I am not certain about that."

The plaintiff, Johnson, specifically denied that he had the assignment made to J. A. Raney with the intent to defraud his creditors and further testified:

"Q. Did you have other property at that time in your own name that was subject to levy by any creditors? A. I did. Q. I believe you stated in your direct evidence when on the stand the first time that there was a surety judgment in Texas. A. Yes, sir, I did. Q. Was there any other litigation at that time you had in mind? A. None other. Q. Now, was there a settlement pending on that judgment at that time? A. There was. Q. Was it afterwards settled? A. It was. Q. Why didn't you want this in your name, then? What reason and in what way could that possibly have affected this title? A. This surety judgment, I didn't know that it would be removed to Oklahoma, but they could do that while we were negotiating this settlement and the propositioning both ways, trading, and if that happened to be removed during the time this assignment was being made from the Gypsy Oil Company to me, and then in turn over to Mr. Noble, it would cloud the title. Q. Cloud whose title? A. Mr. Noble's title. Q. And you would be doing that for his protection? A. So, I had the contract made to Mr. Noble direct and my interest set in Raney's name while this was being concluded. Q. And at that time you had sufficient other property to satisfy this judgment if they had gone back on the settlement and filed it here and tried to collect it? A. I did have and had other property in Texas which was still in my name. * * * Q. You say you had property in Texas? What property was that? A. Well, I owned the Jackson Survey which reached from Burkburnett to Red River, both sides of the Katy railway, 3 miles, probably 900 acres, fee land, and I owned royalties in Burkburnett and oil properties. Q. In your own name? A. In my own name."

In the case of Winnebago State Bank v. Hall, 127 Okla. 215, 260 Pac. 497, the defendant sought to avoid liability on a note and mortgage on the ground that the loan contract, which was executed for the purpose of obtaining the loan as evidenced by the notes sued on, was illegal because it contained the provisions that the borrower should pay the mortgage tax in contravention and violation of statute, and that it so tainted the note and mortgage as to render them void and unenforceable. The court in the body of the opinion in referring to such contention stated:

"But this action is based upon the note and mortgage, no reference in the petition having been made to the loan contract. And it was not necessary in order to properly plead and prove a cause of action based on said note and mortgage to refer to the loan contract. In so far as the record discloses, the mortgage and note were collateral to, and wholly independent of, any illegal agreement made between the parties. This is one of the tests announced in the case of McBlair v. Gibbes, 17 How. 232, 15 L. Ed. 132. See, also, Walters National Bank v. Bantock, 41 Okla. 153, 137 Pac. 717; Citizens' National Bank of Chickasha v. Mitchell, 24 Okla. 488, 103 Pac. 720. The fact that the Halls agreed in advance to pay this fee, in the absence of proof that they contracted by the terms of the mortgage or note to pay the tax, or that they did pay it, would not create a presumption that the mortgage was illegal or unenforceable as against public policy. 6 R. C. L. 694, lays down the following rule: 'The presumption is, however, in favor of the legality of the contract, and if the illegality does not appear on the face of the contract, it must be proved by the person who attacks the validity of the contract.' And again, at page 699, it is said: 'To invalidate a contract for illegality, the illegality must be inherent. It is not enough that it

is associated even closely; it must be a party of the contract.' Another well-recognized principle of law, which we think is applicable to this case, is, in construing a contract, if it appears that the contract is susceptible of two constructions, one lawful and the other unlawful, the former will be adopted. The presumption is that the parties contracted within the law. Foreman v. Needles, 78 Okla. 105, 188 Pac. 1087; Martin v. Okla. State Bank, 86 Okla. 113, 206 Pac. 824; Knebel v. Rennie, 87 Okla. 136, 209 Pac. 414."

The contract by which Noble agreed to carry Johnson for a one-sixteenth interest in the lease was a valid one and such as is frequently entered into between parties engaged in the drilling and operating of oil wells.

If there be any merit in the first proposition and contention of the plaintiffs in error, it arises solely on the ground that the plaintiff, Johnson, carried his interest in the lease in the name of a third party with the intent to defraud his creditors, and the burden was upon the plaintiffs in error to establish such fact.

"1. An intent to defraud is never presumed, but he who alleges such intent must prove it.

"2. In an action to set aside the title to real estate upon the grounds of fraudulent conveyance, the fraud must be distinctly pleaded and clearly and satisfactorily proven, and will not be implied from doubtful circumstances, which only awaken suspicion.

"5. In an action to set aside a fraudulent conveyance, it must be alleged and proved, before the plaintiff can succeed, that at the time of the conveyance, and at the time suit was brought, the debtor did not have enough property left, subject to execution, to pay his debts. The fact that insolvency exists at the time the suit is brought to set aside a fraudulent conveyance does not raise the presumption that insolvency existed prior to that time, and does not extend the insolvency back to the time the conveyance was made." Culp v. Trent, 99 Okla. 112, 226 Pac. 348.

See, also, State ex rel. Mothersead, Bank Com'r, v. Mobley, 112 Okla. 152, 241 Pac. 155; Snell v. Prescott (Idaho) 285 Pac. 483.

The plaintiffs in error rely to considerable extent on the holding in the case of King v. Antrim Lumber Company, supra, to support their first proposition. The facts in that case show the plaintiff to have executed a deed to his real estate for the admitted purpose of hindering or defrauding his creditors, and relief was denied him in an action to quiet his title. The facts in the instant case are much different from those in the King Case, supra. Noble and Raney were each owners in interest in the lease with Johnson, which interests were acquired or earned through the drilling of the original well on the acreage and came through the original assignment from the Gypsy Company. The fact that Johnson failed to record the assignment from Raney to him of his interest in the lease until some three years after its date might create a suspicion, but it does not necessarily establish that it was withheld from record for the purpose of defrauding creditors. On the other hand he, Johnson, did place the assignment of record at a time when a judgment stood against him in favor of the Oil Well Supply Company, which fact would seem to weaken the argument and contention that he withheld the assignment from record for the purpose of defrauding such creditors; furthermore, Johnson testified that he owned property subject to execution in his own name sufficient to satisfy any indebtedness owing by him, and such testimony was not contradicted or shown to be erroneous. The only indebtedness which was admitted or clearly shown to exist against the plaintiff, Johnson, in the year 1921, at the time the assignment was executed, was a judgment in Texas which was later paid or satisfied, according to the testimony of the plaintiff, Johnson. It is stated in the briefs of the plaintiffs in error that the suit of the Oil Well Supply Company against Johnson "was commenced in November, 1923, and represented items owing as far back as February, 1922."

The present action is conceded by the parties to be one in equity and in the nature of an accounting; if so, then the following rule announced in the case of Wolfe v. Killingsworth, 87 Okla. 170, 209 Pac. 410:

"Where an action has been referred to a referee to hear the testimony, make his findings of fact, conclusions of law, and report these, together with the testimony, back to the court, and such report of the referee is approved by the trial court and judgment rendered thereon, and on appeal to this court, the error complained of is that the findings of fact and conclusions of law of the referee and the judgment of the trial court are not sustained by the evidence, such findings of fact and judgment will not be disturbed on appeal, unless this court can say they are clearly against the clear weight of the evidence"

—which was an equity proceeding, would be applicable in the instant case.

From an examination of the evidence and record in this case, we are of the opinion

that the plaintiffs in error failed to prove or establish that plaintiff's acts were fraudulent. We conclude that the refusal of the referee to make finding of fact in accordance with the request of the plaintiffs in error was justified under the record, and therefore the first proposition presented and relied upon for reversal cannot be sustained.

It is argued by the defendant in error, Johnson, in support of the judgment that, even were it shown that the assignment was made to another for the purpose of hindering or delaying his creditors, such fact would not under the law enable the defendants in error to avoid their liability, and he cites some authorities thereon, but in view of the fact that we find against the contention made by the plaintiffs in error, it is unnecessary to discuss or determine the merits of the latter proposition.

The second proposition advanced and argued by the plaintiffs in error is, in substance, and to the effect, that the plaintiff, Johnson, was bound by the judgment in the Creek county litigation, wherein it was decreed that Raney, who was a defendant in that suit, had and held a one-thirty-second interest in the lease in question or just one-half of the interest conveyed him by Noble, the other half apparently being given or decreed to Noble and the Creek Oil Corporation. If Johnson was bound by the decree in Creek county, then all of his interest obtained under the assignment from Raney was levied upon and sold by the Oil Well Supply Company, and he has no further interest or right in the lease or the production therefrom. Plaintiffs in error argue that while Johnson was not named as a party defendant in the Creek county suit, he was nevertheless bound by the judgment therein because he had actual knowledge of the same, and testified as a witness therein, that Raney was the agent or trustee of Johnson and Johnson was bound by the acts of Raney, who agreed to the arbitration under which the judgment apparently was entered, that he, Johnson, was in privity with Raney, and that by his conduct and specific direction, he had authorized the plaintiffs in error to deal with Raney in the handling of the interest in the lease, and was estopped thereby.

In support of the argument and contention made, the plaintiffs in error cite several authorities and decisions bearing on the subject of res adjudicata, privity of parties, and estoppel, which we have examined, but do not consider them sufficient to sustain the second proposition advanced by the plaintiffs in error, or to be directly controlling

when applied to the facts in the instant case. The Creek county suit was an action by the Chas. F. Noble Oil & Gas Company against Chas. F. Noble, J. A. Raney, and Creek Oil Corporation, wherein it was alleged that Chas. F. Noble drilled the first well on the leasehold involved with the funds of the plaintiff corporation and that, by reason of such fact and others alleged, Noble received the assignment of a one-half interest in the lease as trustee for the plaintiff and prayed that it be decreed to own the one-half interest in the leasehold. The Chas. F. Noble Oil & Gas Company also filed two suits in equity in the federal courts against Chas. F. Noble, alone, the exact nature thereof and relief sought thereunder are not clearly shown in the record, but apparently they involved and pertained to prior dealings between the Noble Oil & Gas Company and Chas. F. Noble. The parties named in the Creek county and federal suits agreed in writing to submit the issues arising in the several cases to three arbitrators who should adjust all the differences between the parties, disclosed by the pleadings in the actions. At the time of commencement of the Creek county suit and during the pendency of the same, Raney was employed by the Creek Oil Corporation and held the title of vice president of such company.

The joint answer filed by the defendants Noble, Creek Oil Company, and Raney in the Creek county case, was prepared and filed by the same counsel, and so far as the record and evidence discloses there was no issue involved or dispute between the defendants Noble, Creek Oil Corporation, and Raney, as to their respective interests and rights in the lease. The arbitrators found against the claims of the plaintiff in the Creek county action, Noble Oil & Gas Company, as to their claim to a one-half interest in the lease involved, and no explanation or reason is shown in the award for the change in the interest of the defendants in the lease whereby Raney's interest was purported to have been reduced and that of Creek Oil Corporation increased.

The plaintiffs in error contend that Johnson was in privity with Raney and was bound by the Creek county decree, and by reason of Johnson's failure to record his assignment until after the decree, such facts would bring it within the holding of Lind v. Goble, 117 Okla. 195, 246 Pac. 472, wherein it was held, under the facts of that case, that the holder of an unrecorded deed was a lis pendens purchaser and bound by a final judgment rendered against his grantor affecting the title to the specific property. If it

should be conceded that Johnson was in privity with Raney, still we do not believe the holding in the Lind v. Goble Case, supra, would be applicable under the facts here, because the evidence and pleading are sufficient to establish that Noble and Creek Oil Corporation had actual knowledge that Johnson held an interest in the lease regardless of whether Noble was aware that Johnson held a written assignment from Raney.

Plaintiffs in error cite the case of Gillam v. Coline Oil Co., 136 Okla. 257, 277 Pac. 639, and the holding therein to sustain their contention that the Creek county decree was valid even though there were no pleadings relating to any issue between Noble, the Creek Oil Corporation, and Raney as to their separate interests in the lease.

It will be observed from an examination of the syllabus and the body of the opinion in that case, that the rule there announced was based on the necessity for the determination of the rights between codefendants in order to adjudicate the other matters in issue and they were adversary parties. In the body of the opinion, it is said:

"In the instant case, it was essential that the amount advanced by the oil company for the operation of the lease be ascertained and determined before a decree foreclosing the mortgage executed by the Gillams could have been rendered. No proper decree could have been rendered without so doing. The oil company and the Gillams, under issues raised by the pleadings, were, in fact, adversary parties."

The parties defendant in the Creek county suit were not adversaries as between themselves, and apparently Johnson was not aware that there were any issues in the suit as between the parties defendant which would affect his interest.

"The conclusiveness of a judgment extends only to the question directly in issue, and not to any incidental or collateral matter, though it may have arisen and been passed upon.

"A judgment is conclusive by way of estoppel only as to those facts which were necessarily within the issues, and without proof of which the judgment could not have been rendered." In re Assessment of First Nat. Bank of Chickasha, 93 Okla. 233, 220 Pac. 909.

"A judgment of the court which is outside of the issues in the case, and upon a matter not submitted to the court for its determination, is a nullity, and not binding upon any party to the action." Wright, Adm'x, v. Farmers Nat. Bank, 116 Okla. 74, 243 Pac. 512.

See, also, In re Assessment of First Nat. Bank of Chickasha, supra; Cox v. Colbert, 135 Okla. 218, 275 Pac. 317.

"As a general rule, a judgment settles nothing between coplaintiffs or codefendants unless their conflicting or hostile claims were brought into issue, as by cross-petition or by separate and adverse answers or otherwise, and were thereupon actually litigated and adjudicated." De Watteville v. Sims, 44 Okla. 708, 146 Pac. 224.

In Hogan v. Thrasher, 72 Mont. 318, 233 Pac. 607, it was held that a judgment could not be res adjudicata between codefendants unless they were adversary parties and it was observed by the court that the parties who were codefendants were both represented by the same counsel and stated:

"It is inconceivable that a reputable attorney would represent, in the same action, two clients whose interests were essentially antagonistic."

We are unable to see where Noble or Creek Oil Corporation were misled to their injury by reason of the Creek county decree, or entitled thereby to reduce his interest in the profits from the lease.

"Estoppels operate only between parties and privies, and the party who pleads an estoppel must be one who has, in good faith, been misled to his injury." Simmons v. Chestnut-Gibbons Grocery Co., 70 Okla. 161, 173 Pac. 217.

"The doctrine of estoppel is not intended to work a positive gain to a party; its office is to protect a party from a loss which, but for the estoppel, he could not escape." Haubert v. Navajo Refining Co., 129 Okla. 195, 264 Pac. 151.

Under the record presented, we find no error in the finding of the referee and action of the trial court in holding, in effect, that the plaintiff, Johnson, was not barred of his claim by reason of the Creek county decree.

The third proposition argued and presented by plaintiffs in error is based on the failure of the trial court to grant a new trial, under which it is urged in the several briefs of the plaintiffs in error that the referee and trial court erred in the findings of fact, in rendering judgment for plaintiff, and in the amount of judgment awarded; that the trial court erred in overruling the finding of the referee on the question of allowing legal expenses incurred by Noble in the defense of the Creek county suit, it being contended by the plaintiffs in error that such items, together with certain others, were proper charges against the carried interest of the plaintiff, Johnson. The plaintiffs in error claim they were entitled to charge against

the receipts or production from the lease approximately $7,500 expenses for salary of a superintendent, and $8,500 as office expense, which sums the referee did not allow. There was introduced before the referee a statement or account about which the referee made the following observation during the hearing before him:

"In computing the amount due to the plaintiff, I am compelled to rely mainly upon the books of the Gypsy Oil Company. They are the only books kept accurately at the time of the transactions, and all of the parties to this cause agree that they are accurate. Neither Noble nor Raney seem to have kept books in a business-like manner at the time this lease was producing its largest yield. Auditors who have been selected by the parties to this action cannot themselves reconcile the books of these defendants. Noble kept only the original checks and vouchers. He employed the accountant, Naylor, in 1924, after the bulk of the profits had been received by him and the Creek Oil Corporation, to make up a set of books for the corporation, and while Naylor apparently has made a splendid effort to make up a set of books, there is no assurance that he had access to all of the debits and credits of the Creek Oil Corporation with which to build the books."

Plaintiffs in error say, however, that the Gypsy Company did not include in their records any expense incurred by Noble and the Creek Oil Corporation, and from their own evidence they were entitled to the items claimed.

The superintendent, whose salary it is claimed they were entitled to a credit for, was the defendant Raney, who had an interest in the lease, was vice president, and in the employ of the Creek Oil Corporation who spent only a portion of his time in looking after the operations on the lease in question. Only the first or original well was drilled by Noble and the balance of the wells on the acreage were drilled by the Gypsy Oil Company, who made a charge of 6 per cent. for the office and incidental expense in looking after the drilling of the wells.

From an examination of the record, we are unable to say that the action of the referee thereon was erroneous, or that the evidence was sufficient to show the plaintiffs in error were clearly entitled to the items claimed.

The referee found that the plaintiffs in error were entitled to charge and deduct from the amount found due plaintiff a proportionate share of the expense of the Creek county litigation, including the suits of Chas. F. Noble Oil & Gas Company against Chas. F.

Noble in the federal courts. The total expense of such litigation was testified to by Noble as being the sum of $103,000. The plaintiff, Johnson, took exception to the finding and recommendation of the referee on this item, and the trial court disallowed the same and increased the amount of the judgment in favor of the plaintiff proportionately.

We think the litigation was brought about by reason of the acts of Noble, and that the bulk, if not all, of the litigation involved matters and issues arising individually between Noble and the Chas. F. Noble Oil & Gas Company, of which he at one time was president and director, and which did not affect Johnson's rights. From a consideration of the entire record, we are unable to say that the several items of expense disallowed were necessary and proper, and that the action of the trial court in disallowing the same is against the clear weight of the evidence except as to the expense of drilling the original well. The referee, in his supplemental findings of fact and report, found that Noble and the Creek Oil Corporation had expended the sum of $30,585.81 in the drilling of the first well on the acreage, and deducted from the total amount found due the plaintiff, Johnson, the sum of $1,638.58 as his proportionate share of such expense. The defendant in error, Johnson, argues in his supplemental brief that this item of expense was allowed by the trial court, and says that the contention of plaintiffs in error on this item is without merit for that reason.

A comparison of the journal entry of judgment with the supplemental report of the referee shows that judgment was entered for the full amount as found due the plaintiff, Johnson, without deducting therefrom any portion of the expense of drilling the original well. We are of the opinion that the referee was justified under the evidence in finding that the expense of drilling the original well by the defendant Noble was a proper charge against the carried interest of Johnson, and he should be charged with his proportionate part, which we find to be $3,277.05, instead of the amount found by the referee. The judgment as entered by the trial court should be reduced and modified so as to allow and cover the item of expense referred to in the sum of $3,277.05. In all other respects we find the judgment supported by the record and not against the clear weight of the evidence. It is the duty of the appellate court in an equity action to weigh the evidence, and if the findings and judgment of the trial

54

court be found in part or in whole to be against the clear weight of the evidence, it should render or cause to be rendered such judgment as should have been rendered. Fontenot v. White, 115 Okla. 248, 242 Pac. 854; Feyerherm v. Feyerherm, 128 Okla. 147, 262 Pac. 199.

Accordingly, the judgment in favor of the plaintiff, Johnson, against Chas. F. Noble and Creek Oil Corporation is modified and reduced from the original amount allowed to the sum of $13,724.46, and the judgment as so modified is affirmed.

TEEHEE, REID, FOSTER, and HERR, Commissioners, concur. BENNETT. Commissioner, absent.

Plaintiff below, Johnson, has filed herein, in accordance with rule 11 of this court, his motion for judgment on the supersedeas bond, a copy of which bond is shown in the case-made.

Now, therefore, it is the further order and judgment of this court that defendant in error, J. A. Johnson, have and he is hereby awarded judgment against Chas. F. Noble and the Creek Oil Corporation, as principals, and Maryland Casualty Company, a corporation, surety on the supersedeas bond filed in this cause, for the sum of $13,724.46, with interest thereon at the rate of 6 per cent. per annum from May 31, 1926, and for all the costs of this action.

By the Court: It is so ordered.

Note.—See under (1) 2 R. C. L. p. 211; R. C. L. Perm. Supp. p. 383. (4) 10 R. C. L. p. 698; R. C. L. Perm. Supp. p. 2730. (5) 2 R. C. L. p. 204; R. C. L. Perm. Supp. p. 377. See "Appeal and Error," 4 C. J. §2865, p. 895, n. 62; §2869, p. 900, n. 96; §3230, p. 1192, n. 58. "Estoppel," 21 C. J. §120, p. 1118, n. 2. "Fraudulent Conveyances," 27 C. J. §726, p. 799, n. 42; §770, p. 820, n. 17. "Judgments," 34 C. J. §1478, p. 1041, n. 80.