## SMITH et al. v. FELKEL.

No. 11471—Opinion Filed July 3, 1923.

**1. Appeal and Error—Review—Conflicting Evidence.**

The finding and judgment of the trial court based upon conflicting testimony will not be disturbed by this court on appeal, where there is any testimony reasonably tending to support the same.

**2. Partnership—Conveyance Between Partners—Right of Grantor to Recover Interest and to Partition.**

Where one partner transfers his title in partnership real estate to the other partner and at his suggestion, to avoid imaginary litigation on a claim by a third party against the first partner, and the testimony shows that the claim has been settled, the transfer is not in fraud of creditors, and an action may be maintained to recover the interest transferred and for partition.

**3. Appeal and Error—Change of Theory on Appeal—Action Between Partners.**

Where one partner brings suit against another partner for an interest in the partnership real estate, and the issues are joined and the cause tried upon the theory that payment for the land is the only question involved, neither party will be allowed to change his theory of the case on appeal to this court.

**4. Partnership—Judgment for One Partner Against Another Without Accounting.**

Where a partnership is closed and there are no debts against it, a judgment by one partner against the other partner for an interest in the partnership real estate, without an accounting, is not erroneous.

**5. Appeal and Error—Burden of Showing Error—Rulings on Evidence.**

Where complaint is made of testimony introduced on part of one party and of testimony not allowed on part of the complaining party, it is not enough to call attention to the testimony, but the plaintiff in error must point out wherein his cause suffered injury thereby.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Texas County; Arthur G. Sutton, Judge.

Action by Curt Felkel against W. O. Smith and A. V. Smith to recover interest

in real estate and for partition. Judgment for plaintiff, and defendants bring error. Affirmed.

J. E. Breslin and Embry, Johnson & Tolbert, for plaintiffs in error.

John L. Gleason, J. S. Harris, and R. L. Howsley, for defendant in error.

Opinion by THREADGILL, C. The defendant in error, hereinafter called plaintiff, filed suit in the district court of Texas county, Okla., on the 25th day of September, 1918, against the plaintiffs in error, hereinafter caled defendants, to recover a half interest in and for partition of the following described lands: N. E. ¼ of sec. 33; S. ½ of S. W. ¼; N. ½ of S. W. ¼ and N. ½ of S. E. ¼ of section 34, township 2 north, range 16 east C. M., being in Texas county, Okla., S. ½ of section 22, N. ½ of N. E. ¼ and W. ½ of section 27, S. ½ of S. W. ¼ of section 34, township 2 N., range 16 east of C. M., lots 3 and 4, and S. ½ of N. W. ¼ of section 3, township 1 north, range 16 east C. M.

And thereafter the plaintiff filed an amended petition on October 1, 1918, describing the same lands. He alleges that the said lands were purchased by the plaintiff and the defendant W. O. Smith, each paying half and half, and in a partnership ranch adventure. That the first tract of land bought by them on or about December 1, 1914, was deeded to him and the defendant W. O. Smith jointly and the other land bought from about December 1, 1914, to December 1, 1917, was deeded directly, a part to said defendant and a part to the wife of said defendant. That the first described land is designated as deeded land and the last described as college lands of the state of Oklahoma; that they operated the said ranch business from December, 1914, to January 1, 1918, using all the profits in the improvement of the property and ending the partnership about January 1, 1918. That the partnership was terminated by the wrongful refusal of the defendant W. O. Smith to continue the relationship under the contract and agreement of the parties. He prays that the said lands be partitioned, and for attorney's fees, and that the expense of the suit be divided between them.

The defendant A. V. Smith answers that she claims no interest in the lands other than such interest as her husband sees fit to vest in her name and she joins her husband in his answer so far as her interest is concerned, and otherwise disclaims any interest in the said property.

The defendant W. O. Smith filed an answer to the plaintiff's amended petition, in which he admits the formation and purposes of the partnership, and admits that the title to all of the lands involved stands of record in fee in his name, but he denies that these lands were paid for with any of the money belonging to the plaintiff and he denies that the plaintiff has any interest in the same. He further admits that the partnership was terminated on or about January 1, 1918, but denied that it was terminated by any wrongful act on his part and he prays that the plaintiff take nothing by his suit and that the title of the defendants in and to the lands appearing in their names, and claimed by plaintiff in his petition be quieted in fee simple in the defendants, and that all the claims of the plaintiff be removed as clouds upon their title and for general relief. The plaintiff filed a reply, being a general denial.

The plaintiff claimed that he was a farmer, conducting a small farm and cattle raising business near Ashland, Kan., and the defendant was in the banking business in Ashland, Kan.; that he had been patronizing the defendant's bank since 1906, and the defendant was his confidential friend and business adviser. That in December, 1914, by a verbal agreement, they formed a partnership to buy a ranch in Texas county near Texhoma, and the first tract of land they bought for this purpose was a section of land purchased from Mary J. Booth, at $13.50 an acre; that this tract of land was deeded to them jointly; the plaintiff gave his check for $2,500 drawn on the bank at Ashland at about the same time he gave his note to the bank for $2,500. He was to have charge of the ranch property. The defendant was to pay $50 a month as his part for the plaintiff's services; all the other expenses of conducting the business of the ranch were to be paid equally by the parties. He moved on to the premises with his family and took with him all his farming implements and live stock, which amounted to about $4.000 worth, and the defendant added one horse to this property worth about $65, and they bought other live stock for which he gave his personal checks to the Citizens' State Bank of Ashland, Kan., being the bank the defendant was connected with. He directed the buying and selling of live stock and produce from the ranch, improving the property, and depositing the money, and checking on the bank at Ashland, Kan., until about July or August, 1915, at which time the defendant went out of the banking business at Ashland and took charge of the Farmers' State Bank at Texhoma, Okla., being in the county where the ranch property was situated. The plaintiff transacted all the business of the ranch through the bank

at Texhoma after Smith took charge of it until about January 1, 1918.

In 1916, plaintiff deeded his interest in the Booth land to the defendant. Prior to that time he was in debt to the Fairbanks Morse Company in the sum of $2,000 for a tractor and gang plow, and the company had a mortgage on same, and by their consent and their promise to release him he had sold the tractor and plow to a man by name of Ried in Kansas; that Ried gave them his note and mortgage on the property, and the company agreed to turn back to him his note, which he says they failed to do, and he feared that the company might bring suit against Ried and him and tie up the ranch property, and he talked the matter over with the defendant April 1, 1916; that the defendant advised him that it would be best for him to deed his interest in the ranch land to him and thereby save any trouble from that source; that he made the deed of his interest in the section of land they had bought from Mrs. Booth out of fear that the said company would give them trouble and upon the advice of the defendant. The defendant denied this and claimed that the plaintiff made the deed to him because he could not pay his interest in the land. All of the school land that was added to the ranch was purchased by the joint efforts and money of the parties and the title thereto was taken in the name of other parties than the plaintiff, all of which title was in the name of defendant and his wife at the time the suit commenced. Plaintiff claimed that he and the defendant agreed to check up the property and the affairs of the business between them every six months and to take a general invoice once a year, but he had never been able to get the defendant to check up the business or to furnish any statement of his account in the Bank at Ashland or at Texhoma.

The defendant claimed that the plaintiff had never paid anything for the lands in controversy; that the check for $2,500, given by the plaintiff when they bought the Booth land, was paid by him; that the plaintiff did not have any account in the bank at that time; that he had never been able to pay any part of the purchase price; that in 1916 he deeded him all his interest in the first land they bought because he was not able to pay any part of the purchase price and that he did not invest one dollar in the school lands that were added to the ranch property. These were the issues tried to the court on the 9th day of December 1919, which resulted in a judgment in favor of the plaintiff, and from this judgment, adjudging him to be the owner of an undivid-

ed one-half interest in all the lands belonging to the ranch and ordering a partition of the same and appointing commissioners for that purpose, the defendant prosecutes this appeal.

1. The defendant complains, first, that the testimony is not sufficient to sustain the judgment. There is practically no conflict in the testimony of the parties except as to the matter of payment of the property and the part each took in buying the school land. The testimony on the part of the plaintiff shows that at the time they bought the Booth land they both took part in negotiating the deal, and the plaintiff gave his check for $2,500 as part payment for the land, the same being drawn on his account in the bank at Ashland, Kan., and at the suggestion of the defendant. The defendant contended that the plaintiff did not have any account in the bank and that he paid the check. The plaintiff contended that he turned over to the defendant his 160 acres of land in Kansas to satisfy an indebtedness to the bank, and when the land was sold and the indebtedness satisfied, there was an equity coming to him in the sum of $1,025, which was to be turned in on the payment of the land. The defendant did not deny the fact of this equity, but he did not concede that it was paid on the land. The plaintiff gave his note to the bank at Ashland for $2,500. The defendant did not remember this fact.

The plaintiff testified that the live stock and farming implements, which he owned in Kansas and moved to the ranch in Oklahoma, were valued by him and the defendant at about $4,000. Whether the tractor and plow, upon which there was a mortgage for $2,000, were a part of this appraisement, the testimony does not clearly show. The plaintiff kept the partnership account in the banks in which the defendant was an officer as long as the partnership continued, and all the proceeds of the sales made from the produce of the ranch were deposited in these banks and all the checks in payment of expenses and in conducting the business of the ranch were drawn on these banks. The defendant had the constant inspection and supervision of these accounts under his control, and in the trial of the case he failed to produce the original accounts and by his own manipulations prevented the facts of the account in the Citizens' State Bank at Ashland Kan., from being produced by the deposition of the witness S. E. Grimes.

The plaintiff contended that he took an active part in the plans for buying the

school lands, belonging to the ranch, and they agreed on how the title should be taken. The defendant denied that the plaintiff took any part in buying the school lands, but a letter written by the defendant to the plaintiff at the time he made a trip to Kansas City and closed the deal for the school lands corroborates the plaintiff's testimony.

The evidence on these issues is voluminous and it will serve no good purpose to dwell at length on same in this opinion. The trial court saw the witnesses and heard their testimony and found the issues in favor of the plaintiff and against the defendant, and there being testimony supporting the plaintiff's contention, although conflicting, under the well-established rule of this court, the judgment will not be disturbed on appeal. Nelson v. Golden, 84 Okla. 29, 202 Pac. 308; Hartley v. Riley, 85 Okla. 101, 204 Pac. 920.

2. The defendant complains in the second place that the judgment based upon the plaintiff's testimony in the matter of transferring his interest in the Booth land to the defendant is erroneous for the reason that the testimony of the plaintiff shows that the transfer was made for the purpose of defrauding the Fairbanks Morse Company, a creditor, and if this complaint is well founded, we would be forced to concede that a court of equity would not grant him any relief as to the Booth land. To substantiate this proposition the defendant cites many authorities with which we are familiar and with which we are in hearty accord. This is the crucial point as to the right of the plaintiff to recover the interest he claimed in the Booth tract of land. It must be remembered that the plaintiff testified that he owed the Fairbanks Morse Company $2,000 for the tractor and gang plow, and, by their consent and through an agent, who represented the company, he sold this property to Ried who executed his note to the company and gave them a mortgage on the property to secure the same, and the company agreed to release the plaintiff and agreed to send his note to him, which they failed to do. He stated that in the fall of 1916, after he had this transaction and agreement with Ried and the company, another representative of the company came to him and informed him that the company would look to him for settlement, and that he talked with the defendant about the matter and told him he feared the company would try to give him some trouble, and the defendant suggested that it would be best to give him a bill of sale to all personal property of the ranch and also a deed to his interest in the land. and he would undertake to adjust the matter with the Fairbanks Morse Company, and force them to foreclose on the property they had the mortgage on and in the possession of Reid, and this was how he came to transfer his interest by deed in the land to the defendant. This testimony was in conflict with defendant's, who denied that any such conversation took place between him and the plaintiff, and he further stated that the plaintiff transferred his interest in the land to him because he could pay for it.

It is presumed that the trial court believed the testimony of the plaintiff, in rendering judgment; and if the testimony of the plaintiff is true, we cannot see where there are any elements of fraud in it. He states that in selling the property to Reid, which was by the company's consent and approval, it was with the understanding that he was released from further liability, and if there was no liability on his part there could be no fraud in the transfer, but, as he understood it, they might give him trouble and the company might tie up the ranch property and the defendant suggested the transfer of the record title and he had confidence in the advice of the defendant and made the transfer.

In Hoff et al. v. Hoff et al. (Kan.) 189 Pac. 613, the rule applicable to this case is stated in the fourth paragraph of the syllabus as follows:

"Where there are no actual creditors to be defrauded, and there is only a mental purpose to hinder imaginary creditors, equity will relieve transfers of property without consideration."

From the facts and circumstances attending the transfer of plaintiff's interest in the Booth land to the defendant, and the motives, as revealed by his testimony, prompting the transfer, we are persuaded that the trial court was not in error in basing its judgment upon this testimony of the plaintiff, and this complaint of the defendant is not well taken.

3. The defendant complains, in the third place, that the judgment of the trial court is erroneous because it was rendered without an accounting. The brief cites many authorities to sustain this proposition: Cobb v. Martin et al., 32 Okla. 596, 123 Pac. 422, and Baughman v. Hebree, 62 Okla. 1, 166 Pac. 88; but there were no issues raised as to an accounting, and as to the debts of the partnership, by the pleadings or in the trial of the case, it was conceded by both

parties that the partnership was closed about January 1, 1918. There were no objections on the part of the defendant as to the jurisdiction of the court. Defendant joined the issues with the plaintiff on the claim and right of the plaintiff to recover a half interest in the lands involved and the partition of same, and the defendant denied the plaintiff's right to an interest in the lands and asked for affirmative relief, for the title to be quieted in him, and the cause was tried on this theory of the case, and the defendant will not be heard to change the theory upon which he pleaded and conducted his defense in the trial court. Border v. Carrabine, 24 Okla. 609, 104 Pac. 906; Westlake v. Cooper, 69 Oklahoma, 171 Pac. 859; Limerick v. Jefferson Life Ins. Co., 67 Okla. 178, 169 Pac. 1080; Ruby v. Warrior, 71 Oklahoma, 175 Pac. 355.

4. But if the defendant had tendered the issues in the trial court he is contending for here, with the record as silent as this record is as to debts against the partnership and with the concession of both parties that the partnership terminated before this suit was brought, still the plaintiff would have the right to maintain this action.

In the case of Chowning v. Graham, 74 Oklahoma, 178 Pac. 676, the plaintiff brought an action for the purpose of establishing his interest in an alleged partnership and to decree to him that interest. The answer denied the allegations of the petition filed by the plaintiff, judgment was rendered in favor of the plaintiff and on appeal it was claimed that the judgment was erroneous in that the petition did not state a cause of action and the court was without power to render judgment. The court in passing said:

"Upon the proposition that the court was powerless under the petition and the evidence to render judgment decreeing the plaintiff an ownership in the property in dispute and a tenant in common with the defendant, we hold this contention to be not well taken. This contention is made upon the theory that the interest of the partners in real estate is considered personalty.

"In Tenney v. Simpson, 37 Kan. 353, 15 Pac. 187, it is said:

" 'It is further urged that Simpson was not to have any interest in the land, but only an interest in the proceeds of the sale of lots. This is very technical, but, giving it all the force to which it may be entitled, and still it can make no difference, under the further facts of the case; for, before the commencement of this action, the sale of the lots was discontinued, and the partnership dissolved at the instance of the oth-

er parties, and the partnership debts paid; and always, upon the dissolution of a partnership, and the full payment of the partnership debts, the partners become tenants in common with regard to any and all real estate still belonging to the copartnership.'

"And in the case of Molineaux v. Reynolds, 54 N. J. Eq., 35 Atl. 536, the law on this proposition is held by the New Jersey court to be:

(1) Partnership real estate is regarded as personalty, so far as it is required to pay firm debts. (2) As a general rule, there can be no partition of firm realty so long as there are firm debts outstanding. This rule is to secure the right of each partner to have firm property applied to the payment of firm debts, in order that he may be discharged from personal liability for them. Therefore, if it appears that the realty will not be called upon to pay firm debts, a partition of the same may be decreed.'

"In Re Robinson's Estate, 191 Pa. 239, 43 Atl. 207, it is said:

" 'Conversion of partnership real estate to personalty ceases on dissolution of the partnership by bringing the entire business to an end so that the interest of a partner therein descends as realty, though the stipulated term of the partnership has not expired.'

"In the case of Rogers v. Ralston, 63 Okla. 297, 164 Pac. 980, in an opinion by Justice Kane, a specified interest in oil and gas leases on real estate was decreed the plaintiff. And also in the case of Sherrod v. Mayo, 156 N. C. 144, 72 S. E. 210, Ann. Cas. 1912 D. 1205, it is said:

" 'Where real estate is purchased with firm funds, for firm purposes, a partner's share therein on his death descends to his heirs as realty, in the absence of any stipulation on the articles of copartnership providing that the realty may be treated as personalty, and in the absence of firm debts.'

"So long as the partnership relation exists and there are debts of the firm, the rule contended for by the defendant would apply, because in that case, as stated in the New Jersey case, this rule is to secure the right of each partner to have the firm property applied to the payment of the firm debts. But in this case, where there was but a single transaction, where there were no debts outstanding, and where the object of the suit was to terminate the partnership by establishing the interest of one of the partners in the assets of the partnership, it was within the power of the court to render the judgment it did, decreeing the plaintiff an interest in the real estate and making him a tenant in common with the defendant."

5. The defendant further complains of certain testimony which was introduced by the plaintiff over the objections of the defendant, and in not being allowed to introduce certain testimony on the part of the defendant, and contends that this was prejudicial to the defendant, but it is not pointed out in what partiular the defendant suffered injury thereby. We have examined the testimony complained of and we cannot see how the defendant's cause could be prejudiced by the introduction of this testimony. We have also examined the testimony given by H. A. Salter, cashier of the Texas County Bank of Guymon, as the account of the plaintiff in that bank during the year of 1918 after the partnership had closed. It was excluded by the court and we are unable to see wherein this testimony would assist the defendant's cause. It is contended that it showed he was enjoying considerable prosperity in the use of this ranch property and it showed his disposition to divert the funds belonging to a partnership to his own use and benefit. This testimony did not touch the issues. If we were disposed to enter the field of speculation we could see where this testimony might have been to the detriment of the defendant in raising the presumption that the deposits of the partnership in the banks under the defendant's supervision in the previous years were prosperous, and all of which the defendant, in some way, prevented getting into the record in the trial of the case. It would serve no useful purpose to quote this testimony and follow it in detail in this opinion; suffice it to say, that in our opinion, the defendant did not suffer any wrong or injury by the ruling of the court on this testimony. The judgment of the court awarded substantial justice between these parties.

The judgment of the lower court is affirmed.

By the Court: It is so ordered.