## HICKEY et al. v. ROSS et al.

No. 31996. March 12, 1946.

Rehearing Denied June 11, 1946.

Application for Leave to File Second Petition for Rehearing Denied Oct. 8, 1946.

*172 P. 2d 771.*

Bailey & Hammerly, of Chickasha, and Clifford W. Clift, of Oklahoma City, for plaintiffs in error.

Hatcher & Bond, of Chickasha, and Rainey, Flynn, Green & Anderson, of Oklahoma City, for defendants in error.

HURST, V.C.J. This is a suit to cancel a deed to 160 acres of oil and gas *producing land in Caddo county and to* recover an undivided four-sixths interest in the land. The plaintiffs, Mary E. Hickey, Bertha A. Hays, and Josephine

E. Flood, are the daughters of George Laflin and Nannie Laflin. The other plaintiffs are the children of Clarence Laflin, deceased son of Nannie Laflin and (presumably) George Laflin. George Laflin died in 1897, and thereafter Nannie Laflin married James Rigney. The defendants, Margaret Ross and Catherine Ross, are the children of James Rigney and Nannie Rigney, nee Laflin.

The petition contains two causes of action. The first cause of action is based upon the proposition that the deed which plaintiffs seek to cancel, executed by Nannie Rigney in favor of the two defendants as grantees, was intended as a transfer of the bare legal title, and that Nannie Rigney retained control and possession of the land as well as the equitable title, and the plaintiffs asked that the court adjudge that the defendants be adjudged to hold the title in trust for Nannie Rigney and the plaintiffs and defendants as residuary devisees under her will, Nannie Rigney having died testate on December 18, 1942. In the second cause of action plaintiffs seek specific performance of an oral contract alleged to have been made by James Rigney and Nannie Rigney with the three older daughters of Nannie Rigney, plaintiffs herein, in July, 1913, wherein it was agreed that the land involved in this action, title to which stood in the name of James Rigney, should, upon the death of James Rigney, go in equal parts to the two defendants and the three daughters and one son of George Laflin and Nannie Rigney nee Laflin. The consideration for this agreement is alleged to have been that James Rigney, who was then guardian of the estates of Clarence and the three daughters of George Laflin and Nannie Rigney nee Laflin, and who had in his possession as such guardian some $16,000 as part of the estate left by George Laflin, desired to distribute the same, and there was a question as to whether Clarence was the son of George Laflin and was entitled to any of said money, and the three daughters, in consideration of such agreement, consented that one-fourth of said sum be paid to Clarence instead of insisting that the entire sum be paid to them.

Evidence was introduced bearing upon each cause of action. Much of the evidence pertained to whether Clarence was the son of George Laflin and to the history of the family. The court found the issues in favor of the defendants as to both causes of action, and the plaintiffs appeal.

The plaintiffs argue the case under two propositions, (1) that the court erred in not decreeing specific performance of the contract referred to in the second cause of action, and (2) that the court erred in refusing to decree a resulting trust as prayed in the first cause of action.

1. We think the court did not err in refusing relief under the second cause of action. The only consideration claimed is a monetary one in that the three daughters waived the right to claim the sum of approximately $4,000 that was paid to Clarence. The alleged agreement was oral. We have many times held that, in order to take an oral contract to convey or devise land out of the statute of frauds and to justify its specific performance, payment of the consideration alone is not sufficient, but the promisee must have rendered services of a personal and peculiar character or must have taken possession and improved the land so that it would work a fraud upon the promisee not to enforce it. Pasley v. De Weese, 183 Okla. 424, 82 P. 2d 1066; Miller v. Roberts, 140 Okla. 271, 282 P. 1104; Levy v. Yarbrough, 41 Okla. 16, 136 P. 1120.

2. On the question of whether the defendants should be decreed to hold the land for the benefit of their mother and her residuary devisees under a resulting trust, there are three rules of law to consider: (1) Where the legal estate in real property is conveyed, but the intent appears or is inferred from the terms of the grant or the acts of the parties or the accompanying facts and circumstances that the beneficial interest is retained by the grantor, a trust is

implied or results in favor of the grantor whom equity deems to be the real owner; (2) in order to establish a resulting trust the burden of proof is upon him who seeks its establishment and enforcement, and the evidence must be clear and convincing; and (3) in reviewing a judgment in such a case the Supreme Court will weigh the evidence and determine whether the same fully satisfies such standard of proof and will render or cause to be rendered such judgment as the trial court should have rendered. Beall v. Fergeson, 177 Okla. 216, 58 P. 2d 598; McCrory v. Evans, 192 Okla. 649, 138 P. 2d 823.

We have carefully read and weighed the evidence, and are of the opinion that the plaintiffs met the standard of proof required to establish and enforce a resulting trust. The deed, which was executed on December 16, 1929, was recorded by the grantor on March 22, 1933. There is no evidence as to whether the grantor delivered the deed to the grantees, but the defendant Catherine Ross had possession of the deed at the time of the death of her mother and testified that it had been in her possession since it was returned after being recorded in 1933. She was then living in the home of her mother. The deed was absolute in form, but subsequent to its execution and recording Mrs. Rigney retained the control and beneficial use of the land. She referred to it as "my farm". She looked after renting it for agricultural purposes and collected the rents until 1940. She kept the fences repaired. She kept the improvements insured against fire and windstorm in her own name, paying the insurance premiums, and collecting the loss on one occasion. She looked after the assessment of the land for taxes and kept the taxes paid thereon. She executed drilling contracts and easement contracts. She collected from the lessee all the oil and gas royalties until 1940, and received from the grantees practically all the oil and gas royalties from 1940 to the time of her death, the last payment so received being two days before her death. After the execution

and recording of the deed she consulted a lawyer as to whether she could convey the land. In May, 1935, Mrs. Rigney and the defendants joined in an oil and gas lease on 80 acres of the farm with the provision that Mrs. Rigney should receive all royalties during her lifetime and the defendants should receive the royalties after her death. In 1939, Mrs. Rigney, at the suggestion of the oil and gas lessee, executed an instrument authorizing the lessee to pay the royalties to the defendants, and thereafter they collected the royalties but paid most of them to their mother, despite the fact that their mother did not need the money. The appraised value of her estate at the time of her death, not including the land here involved, was approximately $86,000. The defendants filed gift tax returns on the royalty payments they gave their mother after 1939. The evidence indicates that at the time Mrs. Rigney executed the deed she thought her son-in-law, Tom Hickey, might sue her, and that she later made the statement, about 1938 or 1939, after being sued for a large sum that "now, you can see why I told you I was holding my properties the way I am." There is no evidence that Hickey ever sued her. There is no evidence that there was any friction between the plaintiffs and the defendants or between the plaintiffs and their mother that would cause her to favor the defendants over the plaintiffs. The evidence seems clear that the agreement referred to in the second cause of action that Mr. Rigney and Mrs. Rigney agreed that the six children would share equally in the property left by Mr. Rigney was actually made. A memorandum signed by the older daughters (the plaintiffs) in 1913, and found among the papers of Mrs. Rigney, tends to corroborate the evidence of plaintiffs that such agreement was made. The wills of both Mr. and Mrs. Rigney tend to confim this agreement. Mr. Rigney's will provided that, if Mrs. Rigney should predecease him or they should both die within a short time of each other, his residuary estate, including said farm, should go in equal parts

to his four stepchildren and his two children. Mrs. Rigney made a like disposition of her residuary estate. There is evidence that Mr. Rigney gave each of the defendants some $10,000 out of an oil and gas lease bonus received by him from this land, and that he stated that such payment would make the six children equal in the future. There is no evidence that any of the children of Mrs. Rigney had received a disproportionate part of the estate that would cause Mrs. Rigney to favor the defendants over the plaintiffs.

We conclude that the evidence clearly establishes that Mrs. Rigney did not intend that the defendants should have the beneficial interest in the land and that she intended that they should have only the naked legal title.

3. The defendants contend that in any event the plaintiffs are precluded from recovering the land under the rule that equity will not give relief to a grantor, his heirs, assigns or privies where the grantor has conveyed land, intending to create a secret trust with the beneficial interest in himself, for the purpose of defrauding creditors. They cite 27 C. J. 655, 656; Flesher v. Cooper, 62 Okla. 263, 162 P. 1112; Bobier v. Horn, 95 Okla. 8, 222 P. 238; Phoenix Insurance Co. v. First Nat. Bank 129 Okla. 204, 264 P. 142; Evans v. Evans, 180 Okla. 46, 67 P. 2d 779, and cases from other states, in support of this contention. These authorities state the general rule contended for, but, like most equity rules, it is not inflexible. To this general rule certain exceptions are recognized by this court. Thus, we have held that the rule does not apply where the property conveyed is the homestead, and hence cannot be reached by creditors. Bobier v. Horn, above; Evans v. Evans, above. And we have held that where there are no actual creditors to defraud and the threatened litigation against the grantor is only imaginary

and the transfer is without consideration, equity will give relief against the transfer. See Smith v. Felkel, 91 Okla. 184, 217 P. 196, citing Hoff v. Hoff, 106 Kan. 542, 189 P. 613. This view is supported by other authorities. 27 C. J. 657, § 427; 37 C.J.S. 1101; 24 Am. Jur. 269, note 3. Other authorities make an exception to the general rule in cases where the grantor, his heirs or privies can make out a case without disclosing the fraudulent purpose. 24 Am. Jur. 269, § 121; 117 A. L. R. 1472, note. We think the second exception applies here. It does not appear that Tom Hickey, her son-in-law, was in fact a creditor of Mrs. Rigney or that any suit was ever filed by him. We infer from the evidence that Mrs. Rigney thought that Hickey had been engaging in the liquor business on her farm, and that she had made some statements to that effect, and that she was afraid he might sue her for damages in connection with that matter. Furthermore, it was not necessary that the plaintiffs prove that the conveyance was made to defraud Hickey. The other proof was sufficient to make out a case of resulting trust. The third exception would apply but for the fact that plaintiffs introduced the evidence as to the intent to prevent Hickey from collecting a possible judgment against Mrs. Rigney. Furthermore, the defendants as heirs and residuary devisees of their mother would have benefited equally with the plaintiffs by the transfer for the purpose suggested. We conclude that the general rule contended for by the defendants should not be applied.

Judgment reversed with directions to enter judgment decreeing that the defendants hold the title to said land in trust for the devisees of Mrs. Rigney, under a resulting trust.

GIBSON, C.J., and RILEY, OSBORN, BAYLESS, WELCH, and DAVISON, JJ., concur.