## GILPATRICK v. HATTER.

### No. 35745.

Supreme Court of Oklahoma.

June 30, 1953.

Bailey & Hammerly, Chickasha, for plaintiff in error.

E. S. Hester and George Bingaman, Purcell, for defendant in error.

O'NEAL, Justice.

Truman Hatter, plaintiff below, is the father of Grace Gilpatrick, defendant below, and they will be referred to as they appeared in the trial court.

The trial court found upon controverted evidence that plaintiff was the owner of a sixty acre tract of land in McClain County, Oklahoma. That on November 6, 1933, he executed a warranty deed conveying the land to defendant; that the deed was recorded and thereafter placed in a safety box in a local bank; that the deed was intended as security for the payment of money advanced by defendant to the plaintiff, and as security for improvements made upon the land by defendant. That defendant expended the sum of $1,250 for repairs and improvements in excess of the sum received by her from the property, for which sum defendant was given a lien on the land.

The court found plaintiff was the owner of the sixty acre tract of land described as the Northeast Quarter of the Southeast Quarter; and the East Half of the Southeast Quarter of the Northeast Quarter of Section Six, Township 7 North, Range 4 West, McClain County, Oklahoma, and that his title was superior to defendant's claim, other than the judgment lien of $1,250, with 6% interest thereon from January 26, 1948. An appropriate decree was entered in conformity with the court's finding.

For reversal defendant contends that the judgment of the court is contrary to and wholly unsupported by the evidence, and is therefore contrary to law.

The facts are these: Plaintiff had occupied this tract of land as his homestead for some thirty-eight years prior to the trial in 1951. He was seventy-eight years of age. His first wife died in 1931. Defendant resided with her father upon this land until her marriage in 1931. Due to plaintiff's poor health, he found it necessary from time to time to borrow small sums of money from defendant with which to defray his living expenses, and for the payment of taxes upon the land. In 1933, plaintiff conveyed the land to defendant in consideration of money advanced and to be advanced by her to her father.

In the year 1933, defendant was temporarily living in Mississippi, and plaintiff wrote her several letters, which were introduced in evidence, advising her that he had executed the deed conveying the land to her and had recorded it and placed it in a local bank for safe-keeping. After the execution of the deed plaintiff continued to reside upon the land, cultivating a portion thereof, and leasing or renting a part thereof to others. He built a second dwelling house upon the land which he thereafter rented for several years to the defendant and her husband, and in later years it was rented to third persons, plaintiff collecting and retaining all rents.

Neither plaintiff nor defendant paid the ad valorem taxes upon the land for some years subsequent to 1933, and the land thereafter was sold by the County Treasurer of McClain County to a Mr. Kirby for delinquent taxes. Some question arose as to the validity of the tax deed, and a compromise settlement was made whereby Kirby deeded the land back. At plaintiff's request the defendant was named as grantee in the deed. Defendant at the time was residing in Texas, and plaintiff wrote her advising the details of the re-acquisition of the title to the land. In this letter he said: "I want you to hold this property just like you have been holding it."

Shortly after the receipt of the letter defendant returned to her father's home and reimbursed him for the amount of the delinquent taxes, and from time to time thereafter made further advances to him for certain repairs and improvements to the property, as well as contributions to her father's necessities.

Plaintiff had opened a gravel pit upon the land from which he sold gravel. He retained part of the proceeds of the sales and a portion thereof he delivered to defendant to apply upon advancements theretofore made by her.

Defendant's brother, as a witness, testified that in a conversation with defend-

ant in 1938, she informed him that "She had a deed to his place, but she didn't want him off of the land, off the ownership of it, and when the date came she would return it back to him." The evidence in respect to the various sums advanced by defendant to plaintiff and the repayments made to her, were, in part, uncontradicted, and in some instances in direct dispute.

The finding of the trial court that the balance due defendant in the sum of $1,250 is sustained by substantial evidence, and the court's decree granting defendant a lien on the land for said amount, is not challenged by plaintiff either by motion for a new trial or petition in error.

The defendant sought to defeat plaintiff's ownership of the land, upon her assertion that the land was conveyed to her as an outright gift, and not as security for a loan of money; that if the property was not a gift it was conveyed to her by plaintiff to defeat his creditors; that if said defenses were not well taken that she be given a lien on the land for the sum of $1,594.59, claimed to be due for money advanced to her father.

■■■ We cannot agree with defendant's contention that the property was conveyed to her as a gift. A consideration of all of the evidence inevitably leads us to the conclusion that the transfer was made to secure moneys loaned and improvements made by defendant upon the homestead property. Her alternative plea that she be given a judgment lien for moneys advanced to her father, adds support to these conclusions. Moreover, we do not think that the transfer of the land to defendant was a conveyance to escape a liability to a then existing creditor. There is some evidence tending to show that plaintiff had become a surety on a bond, or obligation of one McGrew. Conceding the point, it does not follow that plaintiff's homestead would be affected by the creditor's claim or a judgment rendered thereon. State ex rel. Grigsby, Co. Atty., v. Stokes et ux., 142 Okl. 160, 286 P. 4. Moreover, the general rule is that he who asserts that a transfer is fraudulent as to creditors must assume the burden of such proof. This defendant failed to do. Noble v. Johnson, 145 Okl. 46, 291 P. 26; Smith v. Felkel, 91 Okl. 184, 217 P. 196. Furthermore, where there are no actual creditors to be defrauded and there is only a mental purpose to hinder an imaginary creditor, equity will not withhold relief. Hickey v. Ross, 197 Okl. 543, 172 P.2d 771.

■■ In Alexander v. Bobier, 65 Okl. 301, 166 P. 716, in construing a homestead right under the circumstances here presented, we held:

"The transfer of the naked legal title of the homestead, retaining the possession and use of same by grantors, even when done with the purpose and intent to defraud creditors, does not destroy the homestead character so as to render it subject to the claims of creditors.

"An equitable title or ownership, together with the possession and occupancy as a home, is sufficient basis to support the homestead."

The following cases cite the rule announced in Alexander v. Bobier, supra. Bobier et ux. v. Horn, 95 Okl. 8, 222 P. 238; Evans v. Evans, 180 Okl. 46, 67 P. 2d 779.

■■ Defendant (plaintiff in error) argues that the evidence fails to sustain the allegations of plaintiff's petition. The argument is largely based upon the alleged failure of proof, that at the time the transfer was made, defendant had previously loaned plaintiff the sum of $1,500. Although the evidence does not support that allegation of the plaintiff's petition, it does amply support the further allegation that the transfer was also made as security for future advances, which defendant agreed to make for the plaintiff's benefit. A valid mortgage may be made to secure future advances as well as for an existing liability. Exchange Bank of Perry v. Nichols, Adm'x, 196 Okl. 283, 164 P.2d 867; Geo. M. Paschal & Bro. v. Bohannan, 59 Okl. 139, 158 P. 365; Kansas City Life Insurance Co. v. Banaka, Register of Deeds of Jackson County, 150 Kan. 334, 92 P.2d 63.

■■ The record discloses substantial evidence to support a finding that defend-

ant loaned plaintiff various sums of money and that the deed was executed to secure the loans. Plaintiff testified as follows: "Well, I figured I would pay this money all back and get my deed back." He further stated that defendant and her husband furnished some of the money to build a barn on the place. That he requested his daughter to keep a record of all moneys furnished him, as well as to certain sums he paid her from proceeds of the sales of gravel from the land. At plaintiff's request defendant furnished a written statement reflecting the condition of their accounts. This statement indicated that at the time defendant claimed an indebtedness due her in the sum of $3,595. As indicated in defendant's answer, she claimed an indebtedness in the sum of $1,594.59. The trial court awarded her the sum of $1,250.

We think the evidence supports the trial court's finding that the deed was intended as a mortgage to secure advancements made by defendant to plaintiff. The judgment therefore is affirmed.