Ben H. JONES, Jennie Elois Gwartney &
Oleta Silvers, Plaintiffs in Error,

v.

Perry W. JONES, Defendant in Error.

No. 35322.

Supreme Court of Oklahoma.

Nov. 1, 1955.

Rehearing Denied Dec. 6, 1955.

Brown & Verity, Geo. L. Verity, Oklahoma City, Garvin & Shumate, Pauls Valley, for plaintiffs in error.

S. H. King, Pauls Valley, Holmes Colbert, Sulphur, for defendant in error.

DAVISON, Justice.

This is a suit to quiet title to an eighty acre tract of land in Garvin County, Oklahoma, brought by the plaintiff, Perry W. Jones, against the defendants, Ben H. Jones, Oleta Silver and Jennie E. Gwartney. The parties will be referred to as they appeared in the trial court.

A statement of the facts can be more clearly made after an identification of the individuals involved. Perry W. Jones, the plaintiff, was an elderly man, some 84 years of age, the father of several grown children, one of whom being F. M. Jones, a son, who died in 1934. The said decedent left, as his heirs, his wife, Forrest Jones, and four children, F. M. Jones Jr., Ben H. Jones, Oleta Silver and Jennie E. Gwartney, the last three named being the defendants herein. In addition to the said F. M. Jones, deceased, the plaintiff had three other children, all living, who are not parties hereto.

The chain of events, leading up to this litigation, began in February 1929 when the plaintiff, while the owner of the eighty acres in question conveyed the same by warranty deed to the above mentioned son, F. M. Jones. F. M. Jones, as above stated, died five years later. Two years after his death, his widow and children executed an oil and gas lease covering the property. Shortly thereafter, the plaintiff executed a quitclaim deed to said heirs, of the said F. M. Jones, deceased. In 1947, some eleven years later, the said heirs of F. M. Jones, deceased, again leased the land for oil and gas purposes to another and different lessee. In June 1949, two of the said heirs of F. M. Jones, deceased, being his widow and his son F. M. Jones, Jr., executed a warranty deed to the plaintiff. The facts, this far stated are either undisputed or are matters of record. In addition, it was also a matter of record that the plaintiff, both prior and subsequent to the execution of the warranty deed in 1929, was a member of the mercantile partnership of A. D. Nowlin & Co. which said partnership was adjudged a bankrupt in March, 1930, upon the petition of creditors.

On August 15, 1949, some two months after the execution of the above warranty deed to plaintiff by the widow and one son of F. M. Jones, deceased, plaintiff filed this suit alleging that he was the owner and in the actual possession of the property. Default judgment was rendered for plaintiff which was later vacated and defendants permitted to plead. They answered by way of general denial with admissions of the original ownership of the land by plaintiff; the execution of the deeds by plaintiff in 1929 and 1936; the death of F. M. Jones in 1934 and the identity of his heirs. No cross petition was filed. Upon those pleadings the case was tried.

Plaintiff's contentions were two-fold and there is substantial competent evidence in the record to amply support them. He tes-

tified that he executed the deed in 1929 in order that his son, F. M. Jones, who had land nearby, could more easily manage and operate the 80 acres in question for and on behalf of the plaintiff; that all income therefrom was turned over to plaintiff who never parted with the actual ownership of, or equitable title to, said lands; that the said F. M. Jones never had more than the bare legal title. As to the deed executed in 1936, plaintiff testified that, due to his interest in the property, the oil and gas lessee would not complete the transaction unless such a deed was executed; that the lease was made for his benefit and he received the bonus and rentals paid thereunder; that after the death of F. M. Jones, another of his sons, Ben F. Jones managed the farm for him; that regardless of the person to whom the various tax receipts were made, the taxes were paid from the income from the farm and then the net remaining was paid over to him.

He also testified that the latter oil and gas lease, executed in 1947 was executed with his consent and at his direction and that he was to be paid all the bonus and rental money received therefor; that Forrest Jones and F. M. Jones, Jr., the wife and son of the decedent paid their parts of the bonus money over to him and, upon demand, executed a deed to their interest to him; that the other three heirs, the defendants herein, refused to pay the bonus money over to him or to reconvey the property to him. He thereupon brought this suit, founding his right to relief upon the theory that he had never parted with the equitable title and further that, if his acts did amount to an actual conveyance of the entire title, then he had been in actual adverse and open possession of the premises for a sufficient length of time that his claim of ownership had ripened into a prescriptive title, good as against every one including the defendants. On practically all points, the testimony of plaintiff was corroborated.

The defendants, as a foundation for their contentions, asserted that plaintiff was barred from any relief in a court of equity for the reason that he did not come in with "clean hands"; that in 1929 when he executed the first deed to F. M. Jones, he did so for the purpose of defrauding his creditors and putting the property beyond their reach; that the partnership of A. D. Nowlin & Co. was in financial difficulties which culminated in the adjudication of bankruptcy in March, 1930; that the property was not scheduled in the bankruptcy proceedings as an asset nor did he disclose his claim of ownership of it. The contentions were supported by evidence of numerous statements allegedly made by plaintiff and his own admission that he had not scheduled the property or disclosed his asserted ownership of it at any stage in the bankruptcy proceedings.

Upon the evidence above outlined, the trial court rendered judgment for the plaintiff and defendants have duly perfected this appeal.

Three points stand out prominently, in evaluating the evidence as disclosed by the record herein. There was no proof that plaintiff was insolvent or seriously indebted at the time of the execution of the deed in February 1929. There was no proof that plaintiff was required or requested to schedule or disclose any of his personal assets in the case of the bankruptcy of the partnership. Lastly, between the time of the execution of the deed in 1929 and the filing of the bankruptcy proceeding in 1930, there occurred the most severe and sudden business crash in this Nation's history, resulting in the failure of many theretofore sound and successful business organizations practically over night.

Defendants rely primarily upon the controlling rule of equity, in the case of Rust v. Gillespie, 90 Okl. 59, 216 P. 480, that,

> "Under the maxim 'He who comes into equity must come with clean hands' a court of equity will not lend its aid in any matter to one who has been guilty of unlawful or unequitable conduct in a transaction from which he seeks relief, nor to one who has been a participant in a transaction the purpose of which was to defraud a third person, to defraud creditors, or to defraud the government, nor to a party to a transaction whose purpose is violative of public policy."

■ In that case, however, plaintiffs' alleged cause of action was founded upon the admitted active participation of their predecessor in a fraudulent transaction. The same was also true in the case of King v. Antrim Lumber Co., 70 Okl. 52, 172 P. 958, 4 A.L.R. 21. In all cases cited and relied on by the defendants, the fraud was either the basis of the action or, in any event, actually admitted. None presents a factual situation analogous to that in the instant case wherein there is a denial of fraud in any degree. The above quoted rule of equity is one strictly followed by this court in all cases where it is applicable. But, to the same extent that the court condemns a person for fraudulent conduct, it should be that zealous in requiring proof of the conduct before any condemnation. That is particularly true in those cases where, as here, the party asserting the fraud was an active participant in it and who also stands to profit by a finding of wrongful conduct.

■ Courts of law require the party alleging fraud to establish it by clear, satisfactory and convincing evidence. Finefrock v. Carney, Okl., 263 P.2d 744; Scrivner v. Scrivner, 207 Okl. 225, 248 P.2d 1045. Courts of equity have relaxed the rule of evidence in that "it suffices to show facts and circumstances from which it (fraud) may be presumed." Young v. Blackert, 51 Okl. 285, 151 P. 1057; Bottoms v. Neukirchner, 29 Okl. 104, 116 P. 434; Armstrong v. Wasson, 93 Okl. 262, 220 P. 643, 644. Nevertheless, those facts and circumstances must be established by evidence before the presumption or inference can arise. Ely Walker Dry Goods Co. v. Smith, 69 Okl. 261, 160 P. 898; Mitchell v. Jackson, 177 Okl. 441, 60 P.2d 390. In the case of Gilpatrick v. Hatter, Okl., 258 P.2d 1200, 1203, the parties occupied much the same positions as in the case before us. It was there held that,

"Moreover, the general rule is that he who asserts that a transfer is fraudulent as to creditors must assume the burden of such proof. This defendant failed to do. Noble v. Johnson, 145 Okl. 46, 291 P. 26; Smith v. Felkel, 91 Okl. 184, 217 P. 196. Furthermore, where there are no actual creditors to be defrauded and there is only a mental purpose to hinder an imaginary creditor, equity will not withhold relief. Hickey v. Ross, 197 Okl. 543, 172 P.2d 771."

■ Several cases have heretofore been before this court wherein the sufficiency of the evidence to sustain an allegation of fraudulent conveyance was considered. Those were cases brought by creditors for the purpose of reaching the property. Such a plaintiff stands in the position of an innocent third party seeking relief from an alleged wrong done to him. The burden placed upon him of proving alleged fraudulent conduct should, certainly, not be greater than that placed upon a grantee relying upon an alleged fraud to which he was a party. Both are litigants in a court of equity. Both seek to brand the grantor as a wrongdoer. Both should bear the same burden of proving the existence of fraudulent intent before being entitled to the application of the rules of equity which control if fraud existed.

■ Where the asserted fraud was that the conveyance was made to hinder, delay and defraud creditors (the same as in the case at bar), this court has held that insolvency of the grantor, at the time of the conveyance must be shown. Culp v. Trent, 99 Okl. 112, 226 P. 348; Oklahoma Nat. Bank v. Cobb, 52 Okl. 654, 153 P. 134; Levinson v. Glidden, 169 Okl. 546, 37 P.2d 924; W. T. Rawleigh Co. v. Groseclose, 174 Okl. 193, 49 P.2d 1085. In the case at bar no such proof was made.

■ From a critical analysis of the record it must be concluded that the only evidence definitely going to the point at issue consisted of the testimony of plaintiff as to his intention in executing the deeds and the testimony of other witnesses as to what he had previously said was his intention. The two are in sharp conflict. In such a situation, if "the finding of the court is not clearly against the weight of the evidence and comes within the principles of equity, the decision of the lower court should be and must be affirmed." Mitchell v. Jackson, supra.

Although the parties have devoted some argument to whether or not a trust was created, the overwhelming weight of the evidence established the fact that, by the execution of the deeds, the plaintiff conveyed only the naked legal title, retaining the beneficial interest or equitable title in himself. This court has never held otherwise than that "in such a case a trust is implied or results in favor of the grantor whom equity deems to be the real owner." Bobier v. Horn, 95 Okl. 8, 222 P. 238, 239.

The judgment is affirmed.

JOHNSON, C. J., and WELCH, HALLEY, JACKSON and HUNT, JJ., concur.

CORN, J., dissents.