**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 10, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JACK W. WILSON,

Defendant-Appellant,

and

JOEY LEE DOBBS-WILSON;
MELISSA DOBBS; REAGAN
RESOURCES, INC.; OKLAHOMA
TAX COMMISSION,

Defendants.

No. 10-7042
(D.C. No. 6:08-CV-00347-KEW)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **EBEL** and **O'BRIEN**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

This appeal arises from a suit filed by the United States pursuant to 26 U.S.C. § 7403 asking the district court to reduce certain of defendant-appellant Jack W. Wilson's tax liabilities to judgment, to set aside a fraudulent transfer of real property from Wilson to defendant Joey Lee Dobbs-Wilson, and to enforce the government's new liens, as well as one preexisting tax lien, against the real property by ordering a sale. Wilson appeals from the district court's[1] order granting summary judgment to the United States. Having determined that we lack jurisdiction over his appeal, we dismiss.

## I.  Facts and Procedural History

In 1997, the United States reduced to judgment Wilson's tax liabilities for 1994; as a result, a lien in favor of the United States attached to his property. In 1998 and again in 1999, Wilson filed nearly identical warranty deeds purporting to convey an 80-acre tract of land to his then-wife, Ms. Dobbs-Wilson. Wilson and Ms. Dobbs-Wilson divorced in 2001. Shortly thereafter, Ms. Dobbs-Wilson conveyed the mineral interest in the land to her daughter, defendant Melissa B. Dobbs. Ms. Dobbs entered into an agreement with an oil and gas company, defendant Reagan Resources, Inc., in 2005.

Wilson filed bankruptcy in early 2003, and his in personam liability for his 1994 taxes was discharged. His in rem liability for his 1994 taxes was unaffected

---

[1] The magistrate judge entered a dispositive order with the consent of the parties. *See* 28 U.S.C. § 636(c).

by his bankruptcy.  The government filed a Release of Lien on the real property later in 2003 and, in early 2004, filed a Revocation of Release to reinstate the 1997 lien on the property.

In September 2008, the United States filed this action to enforce its liens on Wilson's interest in the real property under 26 U.S.C. § 7403.  Under § 7403,

> [i]n any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or *to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest,* to the payment of such tax or liability.

26 U.S.C. § 7403(a) (emphasis added).  As the government was required to do, it named as defendants all of the parties who might claim an interest in the property. *See* § 7403(b).

In its complaint, the government sought a court order reducing Wilson's outstanding tax liabilities for 2001-2005 to judgment and directing the sale of the property to satisfy Wilson's tax liabilities for 1994, as well as for 2001-2005.  To this end, the government asserted that Ms. Dobbs-Wilson was a nominee when Wilson conveyed the property to her in 1998 and that Ms. Dobbs was also Wilson's nominee, so Wilson's transfer of the property to Ms. Dobbs-Wilson, and the subsequent transfer of interests to the other defendants, should be disregarded as fraudulent or sham transactions.  A "nominee" is one who "holds bare or

apparent title to a particular asset that actually belongs to the debtor." *United States v. Krause (In re Krause)*, 637 F.3d 1160, 1165 (10th Cir. 2011). The government alleged that Ms. Dobbs-Wilson paid no consideration for the property, that the property was not mentioned in the divorce decree, and that her signature on the warranty deed did not match her signature on the divorce decree. The government further alleged that Wilson retained possession and control over the property subsequent to the 1998 transfer and that he was "the true and beneficial owner of the property[.]" Aplt. App. at 16.

Shortly after the government filed suit, Ms. Dobbs-Wilson, Ms. Dobbs, and Reagan Resources quitclaimed their interests in the property to the government, and these defendants were dismissed from the suit. The defendant Oklahoma Tax Commission also disclaimed its lien as it related to the real property involved in this suit. The government then filed a motion for summary judgment against Wilson, arguing that the district court should reduce Wilson's tax liabilities for 2001-2005 to judgment and order that all of the liens be foreclosed on the property through a forced sale. Wilson argued in his response to the government's motion for summary judgment and in his cross-motion for summary judgment that Ms. Dobbs-Wilson was not his nominee when he transferred the property to her in 1998 and, as a result, the 1997 lien became invalid when the government mistakenly released it in 2003, after he no longer owned the property.

The district court entered an opinion and order granting summary judgment to the government and denying Wilson's motion for summary judgment. The court reduced Wilson's 2001-2005 liabilities to judgment, declared that the 1997 lien was still valid, rejected Wilson's argument that Ms. Dobbs-Wilson was not a nominee when Wilson conveyed the real property to her, and ordered that the liens for Wilson's 1994 and 2001-2005 tax liabilities be foreclosed on the property. The district court entered judgment and an order of sale.

## II. This Appeal

Wilson appeals, arguing that the 1997 lien for his 1994 taxes was extinguished when the government filed its Release of Lien, because he had already validly conveyed the real property to his then-wife and, as a result, the government's subsequent Revocation of Release was ineffectual.[2] He argues that Ms. Dobbs-Wilson was not his nominee, and that the 1997 lien should not be foreclosed on his ex-wife's property. He does not dispute the amount assessed for his 1994 taxes, and he does not dispute either the amounts of his 2001-2005 taxes or his in rem or in personam liability for them.

---

[2] The government argues that the lien was not extinguished because it has the right to revoke an "erroneously or improvidently" issued Release of Lien under 26 U.S.C. § 6325(f)(2). The government's view is that under § 6325(f)(2), the reinstatement of an erroneously released lien merely establishes a new priority date for the government's lien. Wilson does not argue that the lien was invalid if his wife was his nominee in the 1998 transfer of the property.

We ordered supplemental briefing on our jurisdiction over this appeal. We conclude that we lack jurisdiction because Wilson lacks standing to raise the arguments asserted in his opening brief.

We have previously explained that "[t]he Supreme Court's 'standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, . . . and prudential standing which embodies "judicially self-imposed limits on the exercise of federal jurisdiction."'" *Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1168 (10th Cir. 2011) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984))). "To have Article III standing, '[t]he plaintiff must show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress.'" *Id.* (quoting *Newdow*, 542 U.S at 12). "The prudential standing doctrine encompasses various limitations, including 'the general prohibition on a litigant's raising another person's legal rights.'" *Id.* (quoting *Allen*, 468 U.S. at 751). "'[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). "'Without such limitations—closely related to [Article] III concerns but essentially matters of judicial self-governance—the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions

may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights.'" *Id.* at 1168-69 (quoting *Warth*, 422 U.S. at 500).

We have also explained that "'[t]he standing Article III requires must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance.'" *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011) (quoting *Arizonans for Official Engl. v. Arizona*, 520 U.S. 43, 64 (1997)). And "[i]t is the appellant's burden, not ours, to conjure up possible theories to invoke our legal authority to hear h[is] appeal." *Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275 (10th Cir. 2011), *pet'n for cert. filed* Oct. 5, 2011 (No. 10-6080). To assess an appellant's standing to appeal, we must assume the validity of the arguments he raises on appeal. *Cf. Wilderness Soc'y*, 632 F.3d at 1168 ("'For purposes of standing, we must assume the Plaintiffs' claim has legal validity.'" (quoting *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006) (en banc)). "[I]ndividuals possess Article III standing [to appeal when] they have been injured by a district court ruling and a favorable decision on appeal would ameliorate that injury." *Raley*, 642 F.3d at 1275.

We conclude that Wilson is sufficiently aggrieved by the district court's opinion and order to establish the first part of the required two-part showing for standing. The effect of the court's holding that Ms. Dobbs-Wilson was a nominee

amounts to a holding that the 1998 transfer was fraudulent and Wilson still owned the property. *See Jones v. Jones*, 290 P.2d 757, 759, 761 (Okla. 1955) (holding that owner who conveyed "bare" or "naked legal title" to property remained the real owner). The court's additional determination that the 1997 lien remains valid supported its conclusion that all of the government's tax liens could be foreclosed on Wilson's property. *See Kane v. Capital Guardian Trust Co.*, 145 F.3d 1218, 1221 (10th Cir. 1998) (holding that the government can reach all of a taxpayer's property to satisfy his tax liabilities); *cf. United States v. Rodgers*, 461 U.S. 677, 697 (1983) (indicating that "§ 7403 [does not allow] for the gratuitous confiscation of one person's property interests in order to satisfy another person's tax indebtedness").

Wilson argues on appeal, however, that the 1997 lien was invalid because the government mistakenly released it after the property had been validly conveyed to Ms. Dobbs-Wilson, who was not a nominee, in 1998. He has argued from the beginning of this case that he has not owned this real property since 1998. Assuming the validity of this argument, Wilson has failed to demonstrate that any decision from this court will redress an injury *to him*. *See Allied/Royal Parking L.P. v. United States*, 166 F.3d 1000, 1004 (9th Cir. 1999) (holding that taxpayer/company lacked standing to bring a civil action for wrongful tax collection because it could not "assert a claim for injury from . . . wrongful deprivation" of funds it did not own, and it further could not "claim any injury on

behalf of a third party"); *Maisano v. Welcher*, 940 F.2d 499, 501 (9th Cir. 1991) (holding that taxpayers appearing pro se lacked standing to argue that a truck could not be seized for payment of their taxes because it belonged to a family trust, stating: "If the [truck] belongs to the trust, the [taxpayers] have no standing to sue and their case must be dismissed. If the [truck] actually belongs to the [taxpayers], they lose their argument that the IRS seized property belonging to the wrong party"); *cf. Holman v. United States*, 505 F.3d 1060, 1068-69 (10th Cir. 2007) (holding that taxpayer's wife had standing to file cross-appeal because the district court held that she owned only an undivided half-interest in certain real property, but the wife claimed 100% ownership of the property free and clear of the government's tax lien). Wilson thus fails to satisfy the second part of the required two-part showing for standing, and, as a consequence, we lack jurisdiction to decide his appeal.

It is unnecessary to address the parties' other arguments.

The appeal is DISMISSED for lack of jurisdiction.

Entered for the Court

Terrence L. O'Brien
Circuit Judge